IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RICKY DENARD NORWOOD,          §
                               §
            Petitioner,        §
                               §
V.                             §          No. 3:13-cv-3859-O-BN
                               §
WILLIAM STEPHENS, Director     §
Texas Department of Criminal Justice, §
Correctional Institutions Division, §
                               §
            Respondent.        §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Ricky Denard Norwood, a Texas prisoner, has filed an application for

writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he has challenged his

initial convictions, from 1990, and his 2012 denial of release. *See generally* Dkt. No. 3.

On September 23, 2013, the Court ordered Petitioner's case severed into two habeas

proceedings. *See generally* Dkt. No. 4. The Court previously dismissed with prejudice,

on limitations grounds, the portion of Petitioner's application challenging his 1990

convictions. *See* No. 3:13-cv-3835-O, Dkt. Nos. 13, 15, & 16.

This proceeding concerns only Petitioner's 2012 denial of release. For the

reasons explained below, his application should be denied.

**Background**

On January 30, 1990, Petitioner was found guilty of burglary of a habitation and

was sentenced to 20 years of imprisonment to run consecutively with consecutive life

terms of imprisonment imposed for two convictions for aggravated robbery. All three

convictions were affirmed on appeal. *See Norwood v. State*, No. 05-90-00200-CR (Tex. App. – Dallas Dec. 5, 1990, no pet.).

On July 26, 2012, Petitioner was approved for parole as to the aggravated robbery convictions, effective August 1, 2012. *See* Dkt. No. 12-1, TDCJ records custodian affidavit. On August 1, 2012, Petitioner began serving his sentence for the burglary conviction. *See id.*

In June 2013, Petitioner filed an application for state post-conviction relief, raising, among other claims, the failure of the Texas Department of Criminal Justice ("TDCJ") to release him to mandatory supervision. On August 21, 2013, that application was denied without written order on the findings of the trial court without hearing. *See Ex parte Norwood*, WR-80,024-01 (Tex. Crim. App. Aug. 21, 2013); Dkt. No. 13-4 at 2.

## Legal Standards

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially

indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785-86 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* at 786 (internal quotation marks omitted).

The United States Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity.

The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no farther ." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87; *accord Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not

unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 131 S. Ct. at 784 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

## Analysis

Petitioner claims that he "should have been released to mandatory supervision on the life sentence on October 12, 2004" and, as to the "remaining sentence[,] on

October 12, 2009." Dkt. No. 3 at 12. The state court previously found Petitioner's "claim that he is being denied release to mandatory supervision [to be] without merit" because Petitioner failed to present "evidence that he has been denied due process by the Board of Pardons and Paroles in denying mandatory supervision." Dkt. No. 13-4 at 44, ¶ 7. The undersigned concludes that Petitioner has failed to show that the state court's adjudication of his mandatory release claim resulted in an unreasonable application of clearly established federal law or an unreasonable application of the facts in light of the evidence presented.

First, due to the length of the sentences, Petitioner was not eligible for mandatory supervision as to his life sentences for aggravated robbery. *See Ex parte Franks*, 71 S.W.3d 327, 327-28 (Tex. Crim. App. 2001) ("[A] life-sentenced inmate is not eligible for release to mandatory supervision.") (cited recently by this Court, in *Moreno v. Stephens*, No. 4:13-cv-92-A, 2014 WL 444023, at *2 (N.D. Tex. Feb. 4, 2014)).

As to Petitioner's claim that he should be released on mandatory supervision as to the burglary conviction, carrying a 20 year sentence, his argument is without merit and based on a mistaken interpretation of Texas law, which the United States Court of Appeals for the Fifth Circuit recently discussed:

> In 1987, the Texas Legislature changed the manner in which parole eligibility is calculated for inmates serving consecutive sentences. Before 1987, if an inmate were serving consecutive sentences, these sentences were added together for parole determinations. Since 1987, Texas law has provided that "[a] parole panel may not ... consider consecutive sentences as a single sentence for purposes of parole."

*Moore v. Owens*, 361 F. App'x 587, 589 (5th Cir. Jan. 19, 2010) (per curiam) (quoting

-6-

TEX. GOV'T CODE ANN. § 508.150(c)(1) (Vernon 2004); citing Act of June 19, 1987, ch.

1101, 1987 Tex. Gen. Laws 3750, 3755; *Ex parte Wickware*, 853 S.W.2d 571, 573 (Tex.

Crim. App. 1993)). As the Fifth Circuit further explained,

> [i]nitially, the [TDCJ] interpreted this change as having no practical
> effect on its parole determinations, as it concluded that the date of
> eligibility for release on parole would be the same under either method
> of calculation. Apparently, TDCJ interpreted the law to provide that once
> an inmate became statutorily eligible for parole on his or her first
> sentence, he or she would automatically begin serving his or her second
> sentence. Consequently, after 1987 the TDCJ effectively continued to
> aggregate consecutive sentences into a single sentence for the purposes
> of calculating parole eligibility.

*Id.* (internal citations and quotation marks omitted).

> However, the TDCJ's interpretation of Tex. Gov't Code Ann. § 508.150
> was incorrect. Since 1987, section 508.150(b) has provided that a first
> sentence does not cease to operate and thereby allow an inmate to earn
> eligibility toward parole on a second sentence until (i) the date "when the
> actual calendar time served by the inmate equals the sentence imposed
> by the court" or (ii) "the date a parole panel designates as the date the
> inmate would have been eligible for release on parole if the inmate had
> been sentenced to serve a single sentence." TEX. GOV'T CODE ANN. §
> 508.150(b). As a result, the TDCJ was in error when it allowed inmates
> to earn eligibility for parole on a second sentence without a parole panel
> determination that the first sentence should cease to operate. *See Ex
> parte Kuester*, 21 S.W.3d 264, 270 (Tex. Crim. App.2000) (concluding that
> a sentence only ceases to operate after "a discretionary decision on the
> part of the Board that the person actually would have been released to
> parole but for the second sentence"), *overruled on other grounds, Ex parte
> Hale*, 117 S.W.3d 866, 872 n.27 (Tex. Crim. App. 2003); *Cain v. Tex. Bd.
> of Pardons and Paroles*, 104 S.W.3d 215, 218-19 (Tex. App. 2003)
> (concluding that parole boards "may decline to determine an eligibility
> date [on a first sentence] and set the case for further review in the
> future"). To correct this error, in 1997 "the practice of treating cumulative
> sentences as a single combined sentence was discontinued in lieu of
> performing time calculations on each consecutive case singularly and
> sequentially." *Kuester*, 21 S.W.3d at 265; *see also* TEX. DEP'T OF CRIMINAL
> JUSTICE, ADMINISTRATIVE DIRECTIVE 04.37, CONSECUTIVE SENTENCE
> REVIEW PROCESS 3 (1997) ("The Texas Department of Criminal Justice

and the Texas Board of Pardons and Paroles have determined that time calculations for many consecutively-sentenced inmates (post-1987 offenses) must be re-evaluated. Under the statute passed in 1987, ... each sentence in the consecutive sentence must be considered alone and in sequence."). Additionally, to formalize this new interpretation, the TDCJ adopted a new regulation in 1997 mandating that "[a] parole panel may not treat consecutive sentences as a single sentence for purposes of parole" and that "[a] parole panel shall designate during each sentence the date, if any, on which the prisoner would have been eligible for release on parole if the prisoner had been sentenced to serve a single sentence." 37 TEX. ADMIN. CODE § 145.4 (2009).

*Id.* at 589-90 (footnote omitted); *see also* TEX. GOV'T CODE § 508.147(b) ("An inmate released to mandatory supervision is considered to be released on parole.").

"In Texas, an inmate obtains a liberty interest in mandatory supervision when his sentence ceases to operate. That [did not] occur for petitioner until he [began] serving his last sentence." *Johnson v. Dretke*, No. C.A. C-04-291, 2005 WL 3989802, at *1 (S.D. Tex. Mar. 28, 2005) (citations omitted). And Petitioner's argument that his aggravated robbery convictions ceased to operate on October 12, 2004 appears to be based – incorrectly – on the fact that, as to those convictions, he was parole eligible on October 12, 2004. *See* Dkt. No. 12-2. But, as explained above, under Section 508.150(b), those sentences did not cease to operate until August 1, 2012, the date that the parole panel designated as the date on which Petitioner would have been eligible for release on parole if he was not required to serve a consecutive sentence for the burglary conviction. *See, e.g.*, *Banos v. Director, TDCJ-CID*, Civ. A. No. 9:08-cv-58, 2008 WL 4872870, at *1 (E.D. Tex. Oct. 30, 2008) ("These claims are premised on the theory that he was supposed to begin serving his ten-year sentence when he became eligible for parole on his 60-year sentence, but this is incorrect. Instead, ... the relevant statute

provides that the first conviction will 'cease to operate,' thereby triggering the commencement of the second conviction, when either (a) the actual calendar time served by the inmate equals the sentence imposed by the court, or (b) on the date a parole panel designates as the date the inmate would have been eligible for release on parole if the inmate had been sentenced to serve a single sentence. TEX. GOV. CODE art. 508.150(b). The Texas Court of Criminal Appeals has specifically rejected the notion that subsection (B) of this statute refers merely to the date of parole eligibility, saying that because the statute refers to a parole panel's designation, rather than an inmate's statutory eligibility, subsection (B) must refer to a discretionary decision on the part of the Board that the person actually would have been released to parole but for the second sentence; it is not enough that the inmate merely becomes statutorily eligible for parole." (citations omitted)).

Accordingly, Petitioner has not shown that he is eligible to be released on mandatory supervision and, moreover, that the state court's adjudication of his mandatory release claim resulted in an unreasonable application of clearly established federal law or an unreasonable application of the facts in light of the evidence presented.

## Recommendation

Petitioner's application for writ of habeas corpus should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within

14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 2, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE